### UNITED STATES v. READING CO. et al.

(District Court, E. D. Pennsylvania. May 21, 1921. Decree June 6, 1921.)

#### No. 1095.

1. **Monopolies ⬤═26(2)—In distribution of assets of dissolved combination, equality between common and preferred stockholders required.**
Where by a decree for dissolution of a combination adjudged to be in violation of the Sherman Anti-Trust Law (Comp. St. §§ 8820–8823, 8827–8830), maintained through the medium of a Pennsylvania corporation, it became necessary to take from that corporation and dispose of stock of another corporation which it held unlawfully, in offering such stock to its individual stockholders, through the medium of a corporation created for the purpose, equity *held* to require that no distinction be made between the holders of its common and its preferred stock.

2. **Monopolies ⬤═26(1)—Provisions of decree dissolving illegal combination.**
A decree for dissolution of an illegal combination maintained through a corporation, entered pursuant to a mandate of the Supreme Court requiring that the controlling stock interest in a railroad company held by such corporation should be so disposed of as to establish entire independence between the two companies, *held* to comply with such mandate by requiring the railway stock to be transferred to a trustee, to be held and voted under supervision of the court until it could be advantageously sold, where by reason of pending railroad regulation a fair price could not at the time be realized.

In Equity. Suit by the United States against the Reading Company and others. On settlement of decree.

See, also (D. C.) 226 Fed. 229; 253 U. S. 26, 40 Sup. Ct. 425, 64 L. Ed. 760.

Abram F. Myers, Sp. Asst. Atty. Gen., of Washington, D. C., for the United States.

Charles Heebner and William Clarke Mason, both of Philadelphia, Pa., and R. C. Leffingwell, of New York City, for Reading Co.

Robert W. De Forest and Charles E. Miller, both of New York City, for Central R. Co. of New Jersey.

Alexander S. Lyman, of New York City, for intervener New York Cent. R. Co.

Hugh L. Bond, Jr., of Baltimore, Md., for intervener Baltimore & O. R. Co.

Edwin P. Grosvenor and Cadwalader, Wickersham & Taft, all of New York City, for intervener preferred stockholders' protective committee.

Allen McCarty and White & Case, all of New York City, for intervener common stockholders' protective committee.

Arthur H. Van Brunt and Larkin, Rathbone & Perry, all of New York City, for Central Union Trust Co.

George Wharton Pepper, of Philadelphia, Pa., for intervener Penn Mut. Life Ins. Co.

Michael J. Ryan, of Philadelphia, Pa., for intervener Girard Ave. Trust Co.

Maurice Bower Saul and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for intervener Pennsylvania Co. for Insurance on Lives and Granting Annuities.

Thomas Raeburn White, of Philadelphia, Pa., for interveners Kurtz.

Alfred A. Cook, F. F. Greenman, and Robert Szold, all of New York City, for interveners Continental Fire Ins. Co. and Fidelity-Phœnix Ins. Co.

George S. Ingraham, of Brooklyn, N. Y., for interveners Ingraham and others.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge. [1] On the return to this court of the mandate of the Supreme Court of the United States directing, inter alia, this court to enter a decree "dissolving the combination of the Reading Company, the Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey and the Lehigh & Wilkes-Barre Coal Company, existing and maintaining through the Reading Company, with such provision for the disposition of the shares of stock and bonds and other property of the various companies, held by the Reading Company, as may be necessary to establish the entire independence from that company and from each other of the Philadelphia & Reading Railroad Company, the Philadelphia & Reading Coal & Iron Company," etc., we called before us the counsel for the United States and the counsel for the Reading Company, and directed the latter, in consultation with the former, to formulate a dissolution plan in conformity with the said mandate. In accordance with these directions, and after consultation by all of said counsel from time to time with the court, a tentative plan was eventually drafted and placed on file in the clerk's office, for the inspection of all parties concerned. Subsequently the court gave a hearing to all parties who

desired to be heard, and signified its willingness to receive for consideration petitions to intervene. Numerous parties and representatives of various interests having thus been heard, and numerous briefs having been filed showing the views of the parties concerned, the court was thereby placed in possession of such information as enabled it to determine what parties should be allowed to intervene, and also to formulate such questions, issues, and objections to the proposed plan as would afford a basis for an enlightening and constructive discussion on the part of all parties of record. Accordingly this court, by its order of April 12, 1921, directed it would on May 2, 1921, hear arguments on the following questions:

"1 (a) Whether the sale provided for in paragraph 5 of the Reading plan is such a disposition of the interest of Reading company in the stock of the Philadelphia & Reading Coal & Iron Company' as accomplishes the express purpose of the mandate of the Supreme Court of the United States requiring disposition by Reading Company of such stock because the holding of it has been and would be unlawful;  (b) and if the mandate is thereby complied with, whether such disposition confers upon any one class of stockholders of Reading Company any benefit to the prejudice of the legal rights of any other class of stockholders.

"2. Whether the stock of the Coal Company should be sold free from the lien of the general mortgage, or whether a sale of certificates of interest therein would be a compliance with the provisions aforesaid of the mandate of the Supreme Court of the United States.

"3. Whether the Reading Company should offer a premium of 10 per cent. to the general mortgage bondholders for release of the Coal Company's property from the lien of the mortgage, or whether the requirements of the mandate of the Supreme Court of the United States may be fulfilled by proper injunctive provisions in the decree to be entered in this cause"

—and directed that all parties who desired to be heard should file briefs on April 30, 1921, containing in substance their proposed arguments. Having thus in advance the advantage of the proposed arguments, the court found on the day set for argument that, due to a modification of the plan agreed to by the Attorney General of the United States, the counsel for the Reading Company and counsel representing certain holders of bonds secured by the general mortgage of the Reading Company, substantially all of the above questions were disposed of, save those arising under subdivision (b) of the first question. And this feature, briefly stated, resolved itself into an issue as to the relative rights of the preferred and common stock of the Reading Company, arising out of the disposition of the stock of the Philadelphia & Reading Coal & Iron Company, which latter stock was owned by the Reading Company. The stock of the Philadelphia & Reading Coal & Iron Company so owned by the Reading Company has a par value of $8,-000,000. It will be noted that this stock holding by the Reading Company in the Coal Company was decreed by the Supreme Court an unlawful holding, and was one as to which the Supreme Court directed this court to enter a decree—

"with such provision for the disposition of the shares of stock and bonds and other properties of the various companies, held by the Reading Company. as may be necessary to establish the entire independence from that company and from each other of the Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company," etc.

In the plan proposed this order was complied with, in that the offending stock was, under proper restrictions and elections, to be disposed of to all the stockholders, both common and preferred, of the Reading Company. By this stockholding passing from the ownership of the Reading Company and being vested in the disassociated ownership of the individual stockholders with such provisions for safeguarding against an unlawful combination between them as is provided in the proposed decree, and as will be hereafter described, it will be seen the letter and spirit of the mandate of the Supreme Court are complied with. The offending stock passes out of the ownership of the unlawful holder, and neither it nor the proceeds of its sale can be hereafter used in unlawful combination. In that connection it will be noted that the mandate directs a "disposition of shares of stock and bonds and other property held by the Reading Company," and in that respect the mandate has been complied with precisely, in that there has been a "disposition" of the stock, it being taken from the Reading Company, and it has not even been distributed by that company, but, treated as an unlawful holding of that company, it is to be taken by the court and disposed of absolutely by it, by sale through the agency of a corporation created under the provisions of this decree, to such persons as have qualified to lawfully acquire it. The mere circumstance that those persons are stockholders of the Reading Company is attributable to the fact that, in the application of equitable principles and without sacrifice of the spirit of the mandate, they compose a class of suitable recipients, in the manner above stated, of the stock which was unlawfully held by the company of which they were stockholders. In other words, if the carrying out of the mandate had necessitated the use of this stock to reduce, for example, the bonded or other indebtedness of the Reading Company, the stockholders of that company, which unlawfully held the stock to be disposed of, would have no claim in law to prevent such disposition.

From these considerations it is apparent that, whatever this disposition of the stock may be called, it is in no sense an earning of the Reading Company, which is to be disposed of by that company as a dividend. It is a taking by the law of an asset of that company, a stock asset, which was and has been owned in specie by Reading Company since the Reading reorganization was formed, and which never was earned or could be earned by the Reading Company itself. Indeed, it is now disposed of in substantially the same way as the law would dispose of the property of that company, were it being dissolved, and in that connection we deem it proper to say that, under the facts and circumstances before us, the legal question of dividend distribution between different classes of stockholders is not here involved, and on that question we express no present opinion for the simple reason that we are not dividing profits or earnings.

Seeing, then, that this stock is not an earning of the Reading Company to be distributed as a dividend, but is a part of its capital disposed of in this case to qualifying shareholders, in the manner provided for by the creation of this intermediate corporation, it will be apparent

that this decree of equal right to all shareholders, preferred and common alike, to participate in the sale as ultimate purchasers, is based on the general equitable principle that equality is equity and on the corporate right of all shareholders in a Pennsylvania corporation to share equally on a disposition of its assets. We are therefore of opinion that the plan which embodies these equitable principles should be approved and that the claim of the common shareholders to take all of this stock to the exclusion of the preferred stockholders should be denied. And in approving such plan we note that in point of fact the equity of a common participation of all stockholders, preferred and common, has not only the approval of the government of the United States that has no interest in the controversy, save to see that equity is done to all; of the Reading Company which has no interest save an impartial stewardship for all its shareholders; and, lastly, the silently expressed approval of substantially two-thirds of the shares held by common stockholders.

This significant and impressive fact cannot but be regarded as highly persuasive of the substantial equity of this plan. Of the 1,400,000 shares of the common stock of the Reading Company, less than one-third object to it. The other two-thirds having had the opportunity to object, and failing to do so, we are warranted in treating as acquiescing in the proposed plan. Indeed, we are justified from one circumstance in concluding, from the positive attitude of 100,000 of those shares, that the remainder are not only passively acquiescing, but really actively approving. This particular block of 100,000 shares of the common stock is represented by one man, who is a trustee of an estate which owns it and he himself is the owner of one-half of such trust estate. He or the estate have no preferred stock whatever. He is also a director of the Reading Company and as such favored the plan. By his counsel he appeared at the hearing and strongly urged its adoption, asserting his consent to the preferred stock sharing equally with the common in the disposition of the shares of the Coal Company. His contention was that this equal participation by common and preferred stockholders was not only fair, legal, and equitable, but that such a proportionate division tended to the welfare of all parties concerned and indeed was a course which made the plan possible. When it is considered that the nonparticipation of the preferred stockholders in the shares of the Coal Company, and the absorption of all the stock by the common shareholders would have benefited this particular 100,000 shares by a large sum, this court may rest assured that the proposed plan by its equality works equity.

Without entering upon a further discussion of the questions involved, we are of opinion, after careful and matured consideration, that the plan as amended should be approved, and we therefore direct the preparation of a formal decree embodying its terms. We deem it proper to add that such decree shall provide for the creation of a new corporation, to which shall be sold the equities in the shares of the Philadelphia & Reading Coal & Iron Company held by the Reading Company. The rights to purchase the stock of this newly created com-

pany will be sold to the preferred and common stockholders of the Reading Company share and share alike. In the creation of such a corporation by this court's order, we follow a general course pursued in the case of United States v. Du Pont et al. (C. C.) 188 Fed. 127, and the wisdom of so doing will be seen by an examination of the opinion lately filed in that case, where the purpose of such procedure is fully explained. By the creation of this new corporation by the directions of this court, and by its retention of jurisdiction to enforce this decree as therein provided, the court can, if such contingency should arise, by its control of this newly formed corporation, control all of its stockholders, and prevent such stock from ever being used to thwart the decree made in pursuance of the plan.

[2] The paragraph of the original Reading plan numbered 8, which is paragraph numbered 7 of the plan as modified in accordance with the agreement between Reading Company and the Attorney General of the United States as of May 12, 1921, contains the only provision in the plan proposed to carry out the mandate of the Supreme Court of the United States which is not agreed to in all of its details by the Reading Company and the Attorney General, and as to this provision of the plan the disagreement relates only to a matter of time.

The section referred to concerns the disposition by the Reading Company of the stock of the Central Railroad of New Jersey owned by the former, and as to this disposition Reading Company and the Attorney General agree, that the stock shall be transferred to one or more trustees, individual or corporate, to be held and voted under the terms of the trust until sold to a purchaser other than the parties defendant in this cause.

Reading Company contends that the spirit and the letter of section 5 of the Interstate Commerce Act, as amended by the Transportation Act of 1920 (40 Stat. 456), justifies its prayer that the value of this stock of the Central Railroad Company of New Jersey shall not be subjected to possible sacrifice by a sale until the Interstate Commerce Commission shall adopt a consolidation plan which will designate the several railroads of the East with which the Central Railroad Company of New Jersey may be consolidated, so that assurance may be given to a railroad company purchaser of this stock that the holding of it by such purchaser will not be objectionable.

The Attorney General has contended that the stock should be placed in the hands of a trustee or trustees under a decree of this court, which shall direct Reading Company to proceed with all due diligence to offer the same for sale within a definite period, and if at the expiration of such period a purchaser has not been found by Reading Company, then upon the application of the Attorney General the court may decree a sale of this stock at public auction or in such manner as the court shall then provide.

The court is of opinion that because of the provisions of the Transportation Act of 1920 there is presently no prospective purchaser of the Jersey Central stock at a fair price, and so long as the control of the voting power of this stock is taken from Reading Company and

lodged with a trustee or trustees, acting under the supervision of this court, there is full compliance with the mandate of the Supreme Court, which requires that there shall be established entire independence between these two companies, and we are also of opinion there is no good reason why the decree of this court shall now subject the stock to the possible sacrifice of a forced sale, to the detriment, not only of the Reading Company, but also to the almost equal number of other shareholders of the Jersey Central who are not parties to this record, who have no right to be heard, and yet who may be very seriously affected by a decree of this court ordering at the present time, a forced sale of this majority stock.

The final decree to be entered herein, therefore, will direct the transfer of the stock of the Central Railroad Company of New Jersey, owned by Reading Company, to such trustee or trustees, individual or corporate, as the court may name, and shall contain the terms of the trust, which in substance shall provide that the stock shall be voted by the trustee or trustees, so that at all times there shall be entire independence of directors and management between Reading Company, as it shall be hereafter merged with Reading Railway Company, and the Central Railroad Company of New Jersey, and that pending a sale of the stock all dividends received by the trustee or trustees upon the same shall be paid to Reading Company, or as it shall direct, and that the actual sale of the stock of the Central Railroad Company of New Jersey shall be deferred, in view of the possible grouping of railroads by the Interstate Commerce Commission under the Transportation Act of 1920, subject, however, to a provision in the decree that on motion of the United States or other party, or upon the court's own initiative, that, without awaiting such action by the Interstate Commerce Commission, an order may be entered hereafter for the sale of such stock, if and when it shall appear to the court that the facts require it, or the situation makes it possible.

It is therefore ordered that counsel for the Reading Company and the Attorney General of the United States shall prepare and submit to the court within 15 days a form of decree to make effective the mandate of the Supreme Court of the United States in the above-entitled cause, in accordance with the provisions of the modified plan agreed to by the Reading Company and the Attorney General of the United States and in conformity with this opinion.

Decree.

PER CURIAM. A decree of this court having been entered in the above cause on October 28, 1915, and the said cause having been appealed by both parties to the Supreme Court of the United States, and that court having affirmed in part and in part reversed the decree of this court, a mandate from the Supreme Court containing directions as to the decree to be entered was filed herein on the 13th day of August, 1920.

On October 8, 1920, this court entered an interlocutory decree by which it was ordered:

"That within 90 days from the entry of this decree the defendants shall submit to this court a plan for the dissolution of the unlawful combination between Reading Company, the Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey, and the Lehigh & Wilkes-Barre Coal Company, existing and maintained through the Reading Company, with such provision for the disposition of the shares of stock and bonds and other property of the various companies, held by the Reading Company, as may be necessary to establish the entire independence from that company and from each other of the Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey, and the Lehigh & Wilkes-Barre Coal Company, to the end that the affairs of all these now combined companies may be conducted in harmony with the law."

Thereafter the time within which to present said plan was extended by this court until February 14, 1921, on which date a plan was filed herein pursuant to said interlocutory decree, a counter proposal filed by the United States to paragraph 8 of said plan (paragraph 7 of the modified plan), and an order entered directing that a copy of said plan be served upon the Central Union Trust Company of New York, trustee under the general mortgage referred to therein, and that copies be open to the inspection of all stockholders of the defendant companies. The said counter proposal of the United States was as follows:

"Reading Company shall, with all due diligence, offer for sale at a reasonable price and upon reasonable terms the stock of the Central Railroad Company of New Jersey now owned by it for a period of ―――― years. If at the expiration of such period a sale of such stock has not been made, then, upon application of the Attorney General, the court may decree a sale at public auction at a price not less than a minimum price to be agreed upon between the Reading Company and the Attorney General. During this period Reading Company shall accept any offer by a responsible purchaser made in good faith and at a reasonable price, and in the event of any disagreement between an intending purchaser, who has complied with the foregoing provisions, and the Reading Company, then the matter shall be referred to the Attorney General for his advice, and if the parties shall still be at a disagreement, then any party (Reading Company, the United States, or the intending purchaser) may bring the matter to the attention of the court for its decision. A purchaser under this provision must be approved by the Attorney General and, if a railroad company, shall apply to the Interstate Commerce Commission for its authority to make such purchase under paragraphs 2 and 3 of section 407 of the Transportation Act of 1920.

"For the purpose of carrying out such a provision, jurisdiction of the case shall be retained by the court."

This cause came on for further hearing on March 1, 1921, and leave was given by this court to all persons alleging interest herein to petition for leave to intervene. By permission of this court the United States filed a supplemental bill to make said Central Union Trust Company of New York, trustee under said general mortgage, a party defendant in this cause, and said Trust Company filed an answer thereto on March 18, 1921. Holders of general mortgage bonds and of preferred and common stock of defendant Reading Company filed petitions for leave to intervene, and the Reading Company duly filed its answer to the petitions of intervening common stockholders and cross-petition dated April 5, 1921.

By order entered herein on April 12, 1921, leave to intervene as parties defendant herein was granted to all who had petitioned for leave to intervene and Central Union Trust Company of New York was made a party herein. By order entered herein on April 12, 1921, the court directed that it would on May 2, 1921, hear argument upon the following questions:

"1. (a) Whether the sale provided for in paragraph 5 of the Reading plan is such a disposition of the interest of Reading Company in the stock of the Philadelphia & Reading Coal & Iron Company as accomplishes the express purpose of the mandate of the Supreme Court of the United States requiring disposition by Reading Company of such stock because the holding of it has been and would be unlawful; (b) and, if the mandate is thereby complied with, whether such disposition confers upon any one class of stockholders of Reading Company any benefit to the prejudice of the legal rights of any other class of stockholders.

"2. Whether the stock of the Coal Company should be sold free from the lien of the general mortgage, or whether a sale of certificates of interest therein would be a compliance with the provisions aforesaid of the mandate of the Supreme Court of the United States.

"3. Whether the Reading Company should offer a premium of 10 per cent. to the general mortgage bondholders for release of the Coal Company's property from the lien of the mortgage, or whether the requirements of the mandate of the Supreme Court of the United States may be fulfilled by proper injunctive provisions in the decree to be entered in this cause"

—and directed that all parties who desired to be heard should file briefs on April 30, 1921, containing in substance their proposed arguments.

This cause came on for further hearing on May 2, 1921, and the defendant Reading Company, with the approval of the Attorney General of the. United States, submitted, in open court, modifications of the plan, which met the objections of the bondholders and trustee under the general mortgage, and all parties desiring to be heard were duly heard. Such modifications were thereafter reduced to writing by defendant Reading Company and the Attorney General of the United States and filed herein on May 12, 1921. The objection of the Attorney General of the United States to the provisions of paragraph 8 of the plan (paragraph 7 of the modified plan), however, remained.

The modified plan, providing for the dissolution of the unlawful combination between Reading Company, Philadelphia & Reading Railway Company (hereinafter called the Railway Company), the Philadelphia & Reading Coal & Iron Company (hereinafter called the Coal Company), and the Central Railroad Company of New Jersey (hereinafter called the Jersey Central), is as follows:

"1. The Reading Company will assume the $96,524,000 general mortgage 4 per cent. bonds, which are a joint obligation of the Reading Company and the Philadelphia & Reading Coal & Iron Company (hereinafter called the Coal Company), and will agree to save the Coal Company and its property harmless therefrom.

"2. The Coal Company will pay to the Reading Company $10,000,000 in cash, or current assets at market value, and $25,000,000 in 4 per cent. mortgage bonds of the Coal Company. The mortgage under which they are to be issued may contain provision for the issue thereunder of additional bonds to provide for additions, betterments, and improvements to a limited amount, to be determined by the Reading Company and the Coal Company

prior to the creation of the mortgage, and shall contain provision for a proper sinking fund for the retirement of bonds issued thereunder. The $25,000,000 bonds issued by the Coal Company to the Reading Company shall mature on January 1, 1997, the same date as the general mortgage bonds. The bonds issued by the Coal Company shall be subject to redemption at par and accrued interest on any semiannual interest date as a whole but not in part, except out of the moneys in the sinking fund.

"3. Except as otherwise herein expressly provided, general releases of all claims and liabilities as between the Reading Company and the Coal Company, including the claim of approximately $70,000,000 carried on the books of the Reading Company as an asset and on the books of the Coal Company as a liability, will be exchanged.

"4. The Reading Company will agree with the Coal Company that, at or before the maturity of the general mortgage bonds, it will obtain the release of the Coal Company's property from the lien of the general mortgage and the discharge of the Coal Company from liability on the general mortgage bonds.

"5. If the court so orders, the Reading Company will, subject to the lien of the general mortgage, sell, assign and transfer all its right, title and interest in and to the stock of the Coal Company, including the present right to vote and receive dividends thereon, to a new corporation to be formed with appropriate powers, and will agree to save the new corporation and said stock harmless from the lien of the general mortgage, and will agree to obtain, at or before the maturity of the general mortgage, the release of the stock of the Coal Company from the lien of the general mortgage and the assignment, transfer, and delivery of said stock to the new corporation— all in consideration of the payment by the new corporation to the Reading Company of the sum of $5,600,000, and its agreement to issue its shares to the stockholders of the Reading Company as hereinafter provided.

"The new corporation will issue 1,400,000 shares of stock without par value. Such no par value stock will be sold by the new corporation to the stockholders of the Reading Company, preferred and common, share and share alike, for $5,600,000, or $2 for each share of Reading stock. Provision will be made for the disposition by the Reading Company of any rights to subscribe which may not be availed of by the Reading stockholders within such period as may be fixed by the court, to the end that the new corporation shall receive the full purchase price of $5,600,000. It is proposed to carry out this sale in accordance with the precedent established by the Union Pacific-Southern Pacific case, by issuing to Reading stockhholders, with or without the intervention of a trustee, as may be provided for in the final decree of the court, assignable certificates of interest in the stock of the new corporation exchangeable for such stock only when accompanied by an affidavit that the holder is not the owner of any stock of the Reading Company.

"In addition there will be embodied in the final decree a permanent injunction against the new corporation exercising its voting power on the stock of the Coal Company in such a way as to bring about any new relations between the Coal Company and the Reading Company of the character complained of in the present suit. Any further steps, which may be deemed necessary by the court, will be taken to the end that an independent board and management to be approved by it will be maintained for the Coal Company, so that the independence of this company need not await the necessarily gradual process of the distribution of the no par value stock of the new corporation among persons not holders of stock in the Reading Company.

"The final decree may provide that if, by reason of default on the general mortgage bonds, the trustee, the Central Union Trust Company, shall exercise the right to vote the stock of Reading Coal Company, it shall so exercise that right as not to bring about unity of management between said Coal Company and Reading Company, and the final decree may further provide that, in the event the trustee at any time is obliged to sell the stock or properties of Reading Coal Company, it shall dispose of such stock and properties separately from the properties of Reading Company and to different interests.

"6. The Reading Company will merge the Philadelphia & Reading Railway Company under the authority contained in the present charter of the Reading Company, and will subject the railway property to the direct lien of the general mortgage. The name of the Reading Company, after merger, will not be changed. The Reading Company will accept the Pennsylvania Constitution of 1874, and it will proceed under the act of 1856 to surrender those of its powers which are inappropriate for a railroad corporation of Pennsylvania. Thus the Reading Company will be in all respects subject to the regulation of state and federal authorities as a common carrier, and the relation of the Reading Company, as a specially chartered holding company, to the Philadelphia & Reading Railway Company will be terminated.

"7. The court will be asked to defer the actual sale of the stock held by the Reading Company in the Central Railroad of New Jersey pending the grouping of railroads by the Interstate Commerce Commission under the Transportation Act, but subject to the further order of the court. It is assumed that the Attorney General will ask the court to make an order assuring the voting of the stock pending such sale in the manner approved by the court. A detailed plan for the prompt disposition of the stock of the Lehigh & Wilkes-Barre Coal Company by the Central Railroad of New Jersey has been submitted separately."

The plan for the disposition of the stock of the Lehigh & Wilkes-Barre Coal Company by the Jersey Central was submitted in a form to be embodied in a decree and is incorporated herein in section 8 hereof.

After consideration of the petitions, answer, briefs, and oral arguments, the court filed on May 21, 1921, its opinion in this cause.

It is ordered, adjudged and decreed that:

1. The above-recited modified plan is hereby approved, as supplemented by the provisions of this decree.

2. The Reading Company, the Railway Company, and the Coal Company shall consummate the provisions of the modified plan as so supplemented.

3. The Reading Company shall, subject to the lien of the general mortgage, sell, assign, and transfer all its right, title, and interest in and to the stock of the Coal Company, including the present right to vote and receive dividends thereon, to a new corporation, to be formed with appropriate powers, and shall execute and deliver to Central Union Trust Company of New York, trustee under the general mortgage, and defendant Central Union Trust Company of New York shall honor (unless default shall be made and continue as provided in the general mortgage), an irrevocable order directing it to execute and deliver to such new corporation suitable powers of attorney or proxies to vote such stock and orders for the payment of dividends thereon. Section 5 of the modified plan is supplemented as follows:

(a) The names of the officers and directors of the new corporation to be elected and appointed in the first instance shall be submitted to the court for its approval, and no officer or director of the new corporation shall be an officer or director of the Reading Company.

(b) The Reading Company shall not sell, assign, or transfer its right, title, and interest in the stock of the Coal Company to the new corporation, unless and until the new corporation shall enter its appearance herein by counsel and thereby submit itself to the jurisdiction of this court for all purposes of this cause, and it shall thereupon become a party defendant in this cause and subject to the provisions of this decree. No dividends shall be declared or

paid on the stock of the Coal Company, prior to the sale, assignment, and transfer by the Reading Company of its right, title, and interest therein to the new corporation, except from current earnings subsequent to December 31, 1920.

(c) The stock of the new corporation shall be issued to a trustee or trustees appointed by the court. Such trustee or trustees shall issue certificates of interest therein as contemplated by the modified plan and as hereinafter provided. The Reading Company shall offer such certificates of interest for subscription to its stockholders, preferred and common, share and share alike, and may issue to them assignable warrants evidencing their right to subscribe for said certificates of interest. Neither the defendant Reading Company, nor any corporation controlled by it, nor any person acting in its interest, shall acquire by purchase or otherwise any of said certificates of interest. Such certificates of interest shall be delivered to the subscribers therefor upon payment in full of the subscription price and compliance in all respects with the terms prescribed in the offer. All such certificates shall be registered by the trustee or trustees in the names of the purchasers. They shall be substantially in the form hereto annexed, marked "Form A."

(d) The trustee or trustees shall be entitled, and it shall be their duty, to vote or issue proxies for voting in respect of any and all of said shares of the new corporation held by the said trustee or trustees unless otherwise hereafter directed by this court.

(e) The trustee or trustees shall collect and receive any and all cash dividends paid on the stock of the new corporation held by the trustee or trustees. Upon the exchange, as hereinafter set forth, of any certificate of interest for shares of capital stock of the new corporation held by the trustee or trustees, the trustee or trustees shall pay in cash to the owner of the certificate of interest so exchanged or upon his order the amount of all cash dividends collected by the trustee or trustees, in respect of the number of shares represented by such certificate of interest, but without interest thereon. and shall execute and deliver to such owner or upon his order a dividend order or assignment for the amount of any dividends declared, but not then payable, in respect of shares vested at the time of such exchange in the trustee or trustees as the registered stockholder entitled thereto. Any interest realized or allowed by the trustee or trustees upon funds paid to the trustee or trustees as dividends shall be applicable to the payment of the compensation of the trustee or trustees and the expenses of the administration of the trust, and any balance thereof remaining shall be paid to the defendant Reading Company unless otherwise ordered by the court.

All dividends payable otherwise than in cash, which shall be declared by the new corporation, shall be received and held by the trustee or trustees for the pro rata benefit of said registered owners, from time to time, of the certificates of interest, upon the same terms and conditions as the shares originally deposited, and shall be distributed to the persons who shall be the respective owners of the certificates of interest when and as, and only when and as, the shares originally deposited are distributed to them respectively, subject to any necessary adjustment by scrip or otherwise, in the discretion of the trustee or trustees, in respect of fractional shares.

No deduction shall be made by the trustee or trustees in the distribution of such dividends or subscription rights for any commissions or expenses of the trustee or other costs of collection or payment.

(f) Upon surrender of any outstanding certificates of interest by the registered owner thereof or his assignee, the trustee or trustees shall deliver to him stock certificates for the number of shares of the new corporation represented by the surrendered certificate of interest, which stock certificates shall be issued by the new corporation and registered on its books in the name of the new holder, upon condition, however, that the applicant for such exchange shall file with the trustee a duly executed affidavit in one of the forms hereto annexed.

The affidavit in the case of an individual applying for such exchange in his own right shall be substantially in the form annexed hereto, marked "Form B."

If the applicant is a corporation or joint-stock company, the affidavit shall be executed by its president, vice president, comptroller, secretary, or treasurer, or, in the case of a corporation of a foreign country, by one of its managing officers, and shall be substantially in the form annexed hereto, marked "Form C."

If the applicant is a partnership, the affidavit shall be executed by one of the partners, and shall be substantially in the form annexed hereto, marked "Form D."

If the applicant is an executor, administrator, guardian, or testamentary or other trustee of an express trust, the affidavit shall be made by sucn executor, administrator, guardian, or trustee, as the case may be, or by one of such if the application is made on behalf of joint representatives, or, if such representative is a corporation or joint-stock company, by its president, vice president, comptroller, secretary, or treasurer, or, in the case of a corporation of a foreign country, by one of its managing officers, and shall be substantially in the form annexed hereto, marked "Form E."

The trustee or trustees shall make such appropriate provisions for the registration and transfer of the certificates of interest issued hereunder as are usual with respect to shares of stock.

All certificates of interest surrendered for exchange for stock shall forthwith be canceled by the trustee or trustees and shall not be reissued.

(g) The amount of certificates of interest surrendered for exchange shall be reported monthly by the trustee or trustees to the Attorney General of tne United States, and at any time upon the request of the Attorney General of the United States the trustee or trustees shall furnish him with any additional information which he may require relating to the carrying out of this decree.

(h) If, at any time after July 1, 1924, any of such certificates of interest shall remain outstanding, the court, in its discretion, after a hearing, upon such notice to holders of certificates of interest as it may direct, may order the shares of the new corporation, represented by said certificates, to be sold and the proceeds distributed to the registered owners of such certificates.

(i) During the period allowed for the conversion of the certificates of interest into stock of the new corporation, no present stockholder of the Reading Company shall be a purchaser of stock of the new corporation if still a stockholder of the Reading Company, and the Attorney General of the United States shall have access to the stock transfer books of the Reading Company and the new corporation, for the purpose of enabling him to enforce compliance by such stockholders with this provision of this decree; but nothing herein contained shall extend to holdings as broker, pledgee, trustee, agent, or otherwise in a representative capacity.

(j) Effective upon its becoming a party defendant in this cause, as hereinbefore provided, the new corporation, its officers and directors, are hereby enjoined and restrained from exercising the voting power on the stock of the Coal Company, so as to form such a combination between the Coal Company and the defendant Reading Company as has been adjudged unlawful in this cause.

(k) The Reading Company, and all persons acting for or in its interest, are hereby perpetually enjoined from acquiring, receiving, holding, voting, or in any manner acting as the owner of any of the shares of the capital stock of the new corporation, and the new corporation, and all persons acting for or in its interest, are hereby perpetually enjoined from acquiring, receiving, holding, voting, or in any manner acting as the owner of any of the shares of the capital stock of the Reading Company.

4. The provisions of section 7 of the modified plan shall be consummated as follows:

(a) The Reading Company shall transfer to a trustee or trustees to be appointed by this court (hereinafter called the Jersey Central Trustee), subject to the lien of the Jersey Central collateral trust mortgage dated April 1, 1901 (hereinafter called the Jersey Central Collateral Trust), from Reading Company to the Pennsylvania Company for Insurances on Lives & Granting Annuities, trustee (hereinafter called the Pennsylvania Company), its right, title, and interest in the stock of the Jersey Central.

(b) The Jersey Central Trustee shall hold said right, title, and interest in said shares of stock transferred to it as hereinabove provided, subject to the order of this court. The final disposition of said stock shall be deferred in view of the possible groupings of railroads by the Interstate Commerce Commission under the Transportation Act of 1920, until ordered by this court. The court may in its discretion, upon its own initiative or upon motion of the United States or the Reading Company, without waiting such action by the Interstate Commerce Commission, enter an order for the sale of such stock, if and when it shall appear that the facts require it, or the situation makes it possible.

(c) The Jersey Central Trustee shall be entitled, and it shall be its duty, to vote or cause to be voted all said shares of the Jersey Central, unless otherwise hereafter directed by the court. The Reading Company is hereby enjoined and restrained from voting upon any such shares of stock of the Jersey Central. The Reading Company shall from time to time direct the Pennsylvania Company, pursuant to the provisions of said Jersey Central Collateral Trust, to execute and deliver to the Jersey Central Trustee or its nominees suitable powers of attorney or proxies to vote upon such shares of stock.

(d) Pending the entry of an order by this court directing the final disposition of the Jersey Central stock, the Jersey Central Trustee is hereby enjoined and restrained from exercising the voting power on the Jersey Central stock in such a way as to cause any dependence or intercorporate relations between the defendants Reading Company and the Jersey Central, and in particular from voting so that any officer or director of the Reading Company shall be elected an officer or director of the Jersey Central.

(e) Pending the final disposition of the Jersey Central stock the Reading Company shall be entitled to receive all cash dividends on the stock of the Jersey Central. All dividends payable otherwise than in cash which shall be declared by the Jersey Central shall be received and held by the Jersey Central trustee upon the same terms and conditions as the right, title, and interest of Reading Company in the shares of stock in the Jersey Central originally transferred until finally disposed of as may be directed by order of this court.

5. The defendants Reading Company, the Railway Company, and the Coal Company shall proceed with due diligence to carry out the provisions of this decree, and shall issue calls for meetings of their respective stockholders according to law for the purpose of submitting to the stockholders for their approval such action as may be appropriate to carry out the provisions of the modified plan as approved and supplemented by this decree or in connection therewith. As stockholder of the Railway Company and the Coal Company, the Reading Company shall exercise its right to vote upon the stock of said companies, respectively, for the purpose aforesaid, and shall demand, and the defendant Central Union Trust Company of New York shall execute and deliver to it or its nominees, suitable powers of attorney or proxies for such purpose. Within six months from the date of this decree the defendants Reading Company, the Railway Company, and the Coal Company

shall report in writing to the court what has been accomplished in carrying out the provisions of this decree.

6. If by reason of default on the general mortgage bonds Central Union Trust Company of New York, the trustee under the general mortgage, shall exercise the right to vote the stock of the Coal Company, it shall so exercise that right as not to bring about unity of management between the Coal Company and the Reading Company, and in the event that said trustee at any time is obliged to sell the stock or properties of the Coal Company, it shall dispose of such stock and properties separately from the properties of the Reading Company and to different interests.

7. The Coal Company is hereby permanently enjoined from issuing to the Reading Company, and the Reading Company is enjoined from receiving, any stock, bonds, or other evidences of corporate indebtedness of the Coal Company, in addition to the $25,000,000 of 4 per cent. bonds provided for in paragraph 2 of the modified plan, except such evidences of current indebtedness as may be lawful between shipper and carrier.

8. The Central Railroad Company of New Jersey shall dispose of all the capital stock of the Lehigh & Wilkes-Barre Coal Company now owned by it to persons or corporations who are not its own stockholders or stockholders in either the Reading Company, the Railway Company, or the Coal Company, and who previous to or at the time of purchase shall qualify as purchasers by a duly executed affidavit in one of the forms hereto annexed.

The affidavit in the case of an individual purchasing in his own right shall be substantially in the form hereto annexed, marked "Form F."

If the purchaser is a corporation or a joint-stock company, the affidavit shall be executed by its president, vice president, secretary, or treasurer, or, in the case of a corporation of a foreign country, by one of its managing officers, and shall be substantially in the form hereto annexed, marked "Form G."

If the purchaser is a partnership, the affidavit shall be executed by one of the partners, and shall be substantially in the form hereto annexed, marked "Form H."

If the purchaser is an executor, administrator, guardian, or testamentary or other trustee of an express trust, the affidavit shall be executed by such executor, administrator, guardian, or trustee as the case may be, or by one of such if the application is made on behalf of joint representatives, or, if such representative is a corporation or joint-stock company, by its president, vice president, secretary, or treasurer, or, in the case of a corporation of a foreign country, by one of its managing officers, and shall be substantially in the form hereto annexed, marked "Form I."

All of the said stock shall be disposed of within six months after the entry of this decree, or previous to any other later date which may be fixed by the court. Stock may be disposed of in such manner and upon such terms as the Jersey Central may determine: Provided, however, that it shall only be acquired by persons or corporations qualified

to receive it under the terms of the said affidavits; and provided, further, not less than 20 per cent. shall be paid in cash at the time of its disposition by persons or corporations acquiring it.

On or before the date fixed by the court before which the disposal of such stock shall be completed, the Jersey Central shall file or cause to be filed with the clerk of this court a statement containing the names of the persons, corporations, or partnerships to whom such stock has been disposed of and the number of shares acquired by each, to which statement shall be annexed the said affidavits.

Should all of the said stock not be disposed of before the expiration of six months after entry of this decree or previous to any later date which may be fixed by the court, the remainder shall be then transferred to the Central Union Trust Company of New York (hereinafter called the Wilkes-Barre Trustee), as the custodian and depository of the court, subject to the provisions of this decree and to the further orders and decrees of the court herein. Such stock shall be registered in the name of the Wilkes-Barre Trustee on the books of the Lehigh & Wilkes-Barre Coal Company and certificates therefor delivered to the Wilkes-Barre Trustee.

Such stock, together with any dividends received by the Wilkes-Barre Trustee thereon, shall be transferred by the Wilkes-Barre Trustee from time to time to persons to whom the Central Railroad Company of New Jersey may have sold the same and who are qualified to receive it under the terms of this decree.

Pending transfer the Wilkes-Barre Trustee shall receive such dividends declared on any stock standing in its name and may vote thereon at any stockholders' meeting.

The said Wilkes-Barre Trustee, having declared its submission to the jurisdiction of this court for the purpose of carrying out this provision of this decree and having entered its appearance herein by counsel, is made a party hereto.

The Jersey Central shall from time to time, upon the request of the Attorney General of the United States, furnish him with any information which he may require relating to the carrying out of this decree.

In order to enable the Jersey Central to dispose of the said stock of the Lehigh & Wilkes-Barre Coal Company to the greatest advantage without any accumulated dividends, the injunction heretofore granted in this suit is hereby modified, so as to permit the Jersey Central to collect and receive any dividends which have been or may be declared upon the stock of the Lehigh & Wilkes-Barre Coal Company previous to disposition thereof.

9. All trustees appointed by or pursuant to the foregoing provisions of this decree shall be entitled to reasonable compensation, the amount thereof to be approved by the court, for all services rendered by them as such trustees. The compensation of the trustees appointed pursuant to sections 3 and 4 hereof, together with counsel fees, taxes and other expenses incurred hereunder and approved by the court, shall be paid by the defendant Reading Company except so far as provided for under the provisions of paragraph (e) of section 3 hereof. The compensation of the trustee appointed by section 8 hereof, together with counsel fees,

taxes, and other expenses incurred hereunder and approved by the court, shall be paid by the Jersey Central.

Any trustee or trustees appointed by or pursuant to any provisions of this decree may at any time or from time to time appoint an agent or agents, and may delegate to any such agent or agents the performance of any administrative duties of such trustee or trustees.

10. Any individual or corporation appointed as trustee by or pursuant to this decree shall be subject to removal by this court in its discretion, and, in the event of such removal, the court shall appoint any other individual or corporation as successor.

11. Any individual, or corporation, appointed as trustee by or pursuant to this decree, or any agent of any such trustee, shall be accountable for action hereunder only in proceedings in this cause and any order of this court entered upon notice to such trustee, or such agent, to the Attorney General of the United States, and to the defendants, the Reading Company, the Railway Company, the Coal Company, the Jersey Central, and the Lehigh & Wilkes-Barre Coal Company, and to the new corporation, shall be full protection for any action taken pursuant thereto.

12. Any such trustee or any of the parties to this cause mentioned in section 11 may make application to the court at any time for such further orders and directions as may be necessary or proper in relation to the carrying out of the provisions of this decree, and jurisdiction of this cause is retained for the purpose of giving full effect to this decree and the decree entered herein on October 8, 1920, and for the purpose of making such other and further orders and decrees, or taking such other action, if any, as may be necessary or appropriate to the carrying out and enforcement of said decrees and the directions of the Supreme Court.

## Form A.

No. ————.                                           ———— Shares.

### Certificate of Interest in Company Stock.

This is to certify that the undersigned (hereinafter designated as the "Trustee") has received and now holds for ————, or assigns, certificates representing ———— shares of the capital stock of the ———— Company, a corporation of the state of ————, without par value, subject to the terms of a decree entered the ———— day of June, 1921, by the District Court of the United States for the Eastern District of Pennsylvania, in the suit of the United States of America against Reading Company and others, to which decree reference is hereby made for a statement of the terms and conditions upon which this certificate is issued and of the rights of the holder hereof, and to which decree the holder of this certificate assents by acceptance hereof.

This certificate is one of a series of certificates issued by the undersigned in accordance with the terms of said decree, representing in the aggregate not exceeding 1,400,000 shares of the capital stock of said ———— Company.

The registered owner hereof, or his assigns, is entitled, upon the surrender of this certificate and upon filing with the trustee an affidavit in the form required by section 3f of said decree (to the effect, in substance, that the applicant does not own any shares of the capital stock of the Reading Company and is not acting for or on behalf of any stockholders of the Reading Company, or in concert, agreement, or understanding with any other person, firm, or corporation for the control of the ———— Company in the interest of the Reading Company, but in his own behalf in good faith) to receive a stock certificate for the number of shares of the capital stock of said ————

Company represented by this certificate and to receive the amount of all dividends (but without interest thereon) appertaining to the number of shares represented by this certificate collected and received by the trustee prior to such exchange; also to receive a dividend order or assignment executed by the trustee for any dividend declared but not then payable, appertaining to said shares which shall be vested, at the time of such conversion, in the trustee as the registered holder of said shares.

This certificate is transferable by the registered owner hereof, in person or by his duly authorized attorney, at the office or agency of the trustee in the city of New York upon surrender and cancellation hereof, and thereupon one or more new certificates for a like number of shares will be issued to the transferee in exchange therefor.

This certificate is not valid until countersigned by the registrar.

In witness whereof, ————, as trustee, has caused this certificate to be executed by ———— this ———— day of ————, 1921.

————————, Trustee,

By ————————.

Countersigned: ————————, Registrar.

### Form of Assignment.

For value received the undersigned hereby sells, assigns, and transfers unto ———— the interest in ———— company shares and dividends thereon represented by the within certificate and does hereby irrevocably constitute and appoint ———— attorney to transfer the same on the books of the ————, trustee, with full power of substitution in the premises.

"Dated ————.

In the presence of:

————————.

————————.

### Form B.

State of ————, County of ————, ss.:

————, being duly sworn, deposes and says:

That deponent is a bona fide owner in his (or her) proper right of a certificate or certificates of interest numbered ———— for ———— shares registered in the name of ————, issued by ————, as trustee, under a decree entered on the ———— day of June, 1921, by the District Court of the United States for the Eastern District of Pennsylvania, in the suit of the United States of America against Reading Company and others, and makes this affidavit for the purpose of procuring the issue of shares of the capital stock of the ————. Company held by said trustee, in exchange for said certificate (or certificates) of interest. That deponent does not own in his (or her) own right any shares of the capital stock of the Reading Company, a corporation of the commonwealth of Pennsylvania, whether registered in his (or her) own name on the books of said Reading Company or registered in the names of others for deponent's use and benefit. That deponent, in making this application, is not acting for or on behalf of any stockholder of the Reading Company, or in concert, agreement, or understanding with any other person, firm, or corporation for the control of the ———— Company in the interest of the Reading Company, but in his (or her) own behalf in good faith.

Sworn to before me this ———— day of ————, 1921.

### Form C.

State of ————, County of ————, ss.:

————, being duly sworn, deposes and says:

That he is ———— of the ———— Company, a corporation (or a joint-stock company), hereinafter called the "applicant." That said applicant is the bona fide owner in its own proper right of a certificate or certificates of interest numbered ———— for ———— shares, registered in the name of ————, issued by ————, as trustee, under a decree entered on the ———— day of June, 1921, by the District Court of the United States for the Eastern District of Pennsylvania, in the suit of the United States of America against

273 F.—55

Reading Company and others, and that deponent makes this affidavit for the purpose of procuring the issue of shares of the capital stock of the ——— Company held by said trustee, in exchange for said certificate (or certificates) of interest. That said applicant does not own in its own right any shares of the capital stock of the Reading Company, .a corporation of the common-wealth of Pennsylvania, whether registered in its own name on the books of said Reading Company or registered in the names of others for said appli-cant's use and benefit. That said applicant, in making this application, is not acting for or on behalf of any stockholder of the Reading Company, or in concert, agreement, or understanding with any other person, firm, or corpora-tion for the control of the ——— Company in the interest of the Reading Company, but in its own behalf in good faith.

Sworn to before me this —·—— day of ———, 1921.

### Form D.

State of ———, County of ———, ss.:

———, being duly sworn, deposes and says:

That he is a member of the partnership of ———, hereinafter called the "applicants"; that said applicants are the bona fide owners in their own proper right of a certificate or certificates of interest numbered ——— for ——— shares, registered in the name of ———, issued by ——— as trustee, under a decree entered on the ——— day of June, 1921, by the District Court of the United States for the Eastern District of Pennsylvania, in the suit of the United States of America against Reading Company and others, and deponent makes this affidavit for the purpose of procuring the issue of shares of the capital stock of the ——— Company held by said trustee in exchange for said certificate (or certificates) of interest. That said applicants do not own in their own right any shares of the capital stock of the Reading Com-pany, a corporation of the commonwealth of Pennsylvania, whether regis-tered in the applicants' own name on the books of said Reading Company or registered in the names of others for their use and benefit. That said ap-plicants, in making this application, are not acting for or on behalf of any stockholder of the Reading Company, or in concert, agreement, or under-standing with any other person, firm, or corporation for the control of the ——— Company in the interest of the Reading Company, but in their own behalf in good faith.

Sworn to before me this ——— day of ———, 1921.

### Form E.

State of ———, County of ———, ss.:

———, being duly sworn, deposes and says:

That is he is ——— of ———. That the trust estate represented by de-ponent is the bona fide owner in its proper right of a certificate or certificates of interest numbered ——— for ——— shares, registered in the name of ———, issued by ———, as trustee, under a decree entered on the ——— day of June, 1921, by the District Court of the United States for the Eastern District of Pennsylvania, in the suit of the United States of America against Reading Company and others. That deponent makes this affidavit for the purpose of procuring the issue of shares of the capital stock of ——— Com-pany held by said trustee, in exchange for said certificate (or certificates) of interest. That said trust estate does not own any shares of the capital stock of the Reading Company, a corporation of the commonwealth of Penn-sylvania, whether registered in the name of said trust estate on the books of said Reading Company or registered in the names of others for the use and benefit of said trust estate. That said trust estate, in making this applica-tion, is not acting for or on behalf of any stockholder of the Reading Com-pany, or in concert, agreement, or understanding with any other person, firm, or corporation for the control of the ——— Company in the interest of the Reading Company, but in its own behalf in good faith.

Sworn to before me this ——— day of ———, 1921.

## Form F.

State of ———, County of ———, ss.:

———, being duly sworn, deposes and says: That deponent is the bona fide purchaser in his (or her) own proper right of a certificate or certificates for ——— shares of the capital stock of the Lehigh & Wilkes-Barre Coal Company, transferred to him (or her) by the Central Railroad Company of New Jersey under a decree entered on the ——— day of ———, 1921, in the suit of the United States of America v. Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey, the Lehigh & Wilkes-Barre Coal Company, et al., and makes this affidavit at or previous to the time or the issuance to him (or her) of such certificate or certificates for the purpose of evidencing his (or her) right to receive the same. That deponent does not own in his (or her) own right any shares of the capital stock of the Central Railroad Company of New Jersey, Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, whether registered in his (or her) own name on the books of said companies or any of them or registered in the names of others for deponent's use and benefit. That deponent in receiving the said certificate or certificates is not acting for or on behalf of any stockholder of the Central Railroad Company of New Jersey or of any other of the said companies or in concert, agreement or understanding with any other person, firm or corporation for the control of the Lehigh & Wilkes-Barre Coal Company in the interest of the Central Railroad Company of New Jersey or of any other of the said companies, but is acting in his (or her) own behalf in good faith.

Sworn to before me this ——— day of ———, 1921.

## Form G.

State of ———, County of ———, ss.:

———, being duly sworn, deposes and says: That he is ——— of ———, a corporation (or a joint-stock company). That said corporation is the bona fide purchaser in its own proper right of a certificate or certificates for ——— shares of the capital stock of the Lehigh & Wilkes-Barre Coal Company, transferred to it by the Central Railroad Company of New Jersey under a decree entered on the ——— day of ———, 1921, in the suit of the United States of America v. Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey, the Lehigh & Wilkes-Barre Coal Company, et al., and makes this affidavit at or previous to the time of the issuance to it of such certificate or certificates for the purpose of evidencing its right to receive the same. That said corporation does not own in its own right any shares of the capital stock of the Central Railroad Company of New Jersey, Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, whether registered in its own name on the books of said companies or any of them or registered in the names of others for its use and benefit. That said corporation in receiving the said certificate or certificates is not acting for or on behalf of any stockholder of the Central Railroad Company of New Jersey or of any other of the said companies or in concert, agreement or understanding with any other person, firm or corporation for the control of the Lehigh & Wilkes-Barre Coal Company in the interest of the Central Railroad Company of New Jersey or of any other of the said companies, but is acting in its own behalf in good faith.

Sworn to before me this ——— day of ———, 1921.

## Form H.

State of ———, County of ———, ss.:

———, being duly sworn, deposes and says: That he is a member of the partnership of ——— (hereinafter called the "partnership"). That said partnership are the bona fide purchasers in their own proper right of a certificate or certificates for ——— shares of the capital stock of the Lehigh &

Wilkes-Barre Coal Company, transferred to them by the Central Railroad Company of New Jersey under a decree entered on the ——— day of ———, 1921, in the suit of the United States of America v. Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey, the Lehigh & Wilkes-Barre Coal Company, et al., and makes this affidavit at or previous to the time of the issuance to them of such certificate or certificates for the purpose of evidencing their right to receive the same. That said partnership does not own in their own right any shares of the capital stock of the Central Railroad Company of New Jersey, Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, whether registered in their own name on the books of said companies or any of them or registered in the names of others for their use and benefit. That said partnership in receiving the said certificate or certificates is not acting for or on behalf of any stockholder of the Central Railroad Company of New Jersey or or any other of the said companies or in concert, agreement or understanding with any other person, firm or corporation for the control of the Lehigh & Wilkes-Barre Coal Company in the interest of the Central Railroad Company of New Jersey or of any other of the said companies, but is acting in their own behalf in good faith.

Sworn to before me this ——— day of ———, 1921.

### Form I.

State of ———, County of ———; ss.:

———, being duly sworn, deposes and says: That he is ——— of ———. That the trust estate represented by deponent is the bona fide purchaser in its own proper right of a certificate or certificates for ——— shares of the capital stock of the Lehigh & Wilkes-Barre Coal Company transferred to him by the Central Railroad of New Jersey under a decree entered on the ——— day of June, 1921, in the suit of the United States of America v. Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, the Central Railroad Company of New Jersey, the Lehigh & Wilkes-Barre Coal Company, et al., and makes this affidavit at or previous to the time of the issuance to him of such certificate or certificates for the purpose of evidencing his right to receive the same. That said trust estate does not own any shares of the capital stock of the Central Railroad Company of New Jersey, the Reading Company, Philadelphia & Reading Railway Company, the Philadelphia & Reading Coal & Iron Company, whether registered in the name of said trust estate on the books of said companies or any of them or registered in the names of others for the use and benefit of said trust estate. That said trust estate in receiving the said certificate or certificates is not acting for or on behalf of any stockholder of the Central Railroad of New Jersey or of any other of the said companies, or in concert, agreement, or understanding with any other person, firm, or corporation for the control of the Lehigh & Wilkes-Barre Coal Company in the interest of the Central Railroad of New Jersey or of any other of the said companies, but is acting in its own behalf in good faith.

Sworn to before me this ——— day of ———, 1921.